

FILED IN OPEN COURT
U.S.D.C. - Atlanta

APR 19 2023

KEVIN P. WEIMER, Clerk
By: [signature] Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>WILLIAM SPENCER ASKEW | Criminal Indictment<br><br>**1:23CR130**<br><br>**UNDER SEAL** |

THE GRAND JURY CHARGES THAT:

## Background

At all times relevant to this Indictment:

1. Defendant **WILLIAM SPENCER ASKEW** was born in Georgia, received a degree from Kennesaw State University, and resided in the Atlanta area until in or about January 2019. Defendant **ASKEW** subsequently moved to Newport Beach, California, but continued to routinely travel to and conduct business activity in the Northern District of Georgia.

2. Defendant **ASKEW** was the founder and CEO of EFreightSolutions Holdings, LLC ("EFS Holdings"), a Delaware limited liability company incorporated on or about April 27, 2012. EFS Holdings was a holding company for another business operated by defendant **ASKEW**, E-Freight Solutions World Wide, LLC ("EFSWW"), located at 2451 Cumberland Parkway, Suite 3710, Atlanta, Georgia.

3. EFSWW was a Georgia limited liability corporation incorporated on or about March 19, 2010, located at 2451 Cumberland Parkway, Suite 3710, Atlanta, Georgia 30339. EFSWW was a logistics and supply chain company that provided a network for carriers and suppliers of goods to come together and arrange the transportation of goods. Defendant **ASKEW** was the CEO of EFSWW and its registered agent.

4. Teknowlogi, LLC ("TEK") was registered in Georgia as the tradename for EFSWW that offered an "Uber-like" software platform for the trucking industry, namely, software that matched shippers with transportation providers. EFSWW employed those who developed and maintained TEK's software offering. TEK's revenues, assets, and liabilities were reflected on EFSWW's balance sheet and financial statement. On or about February 25, 2020, TEK was registered as a Delaware limited liability company located at 2451 Cumberland Parkway SE, Suite 3710, Atlanta, GA 30339.

5. Techknowlogi Holdings, LLC d/b/a Teknowlogi (collectively "Teknowlogi") was a Georgia limited liability company founded by defendant **ASKEW** in or about May 2015 and located at 2451 Cumberland Parkway, Suite 3710, Atlanta, Georgia. Techknowlogi Holdings's Articles of Organization identified defendant **ASKEW** as its "Organizer." Teknowlogi was essentially a shell company that conducted little or no business.

6. FNB Bank was a small FDIC-insured bank based in Romney, West Virginia.

7. Vinings Bank was an FDIC-insured bank based in Vinings, Georgia.

2

8. Defendant **ASKEW** opened and controlled the following bank accounts:

   a. On or about November 24, 2015, defendant **ASKEW** opened a business account at a Wells Fargo branch in the Northern District of Georgia in the name of Teknowlogi ("WF x1261"). Defendant **ASKEW** was the lone signatory on this account and the mailing address for this account was in the Northern District of Georgia.

   b. On or about April 20, 2018, defendant **ASKEW** opened a money market account at a Vinings Bank branch in Smyrna, Georgia in the name of Teknowlogi ("Vinings x3612"). Defendant **ASKEW** was the lone signatory on this account and the mailing address for this account was in the Northern District of Georgia.

   c. On or about April 20, 2018, defendant **ASKEW** opened a business account at a Vinings Bank branch in Smyrna, Georgia in the name of Teknowlogi ("Vinings x0733"). Defendant **ASKEW** was the lone signatory on this account and the mailing address for this account was in the Northern District of Georgia.

## Count One
### (18 U.S.C. § 1344 – Bank Fraud against FNB Bank)

9. The factual allegations contained in Paragraphs 1 through 8 of this Indictment are re-alleged and incorporated as if fully set forth herein.

10. Beginning no later than in or about February 2018, and continuing until at least in or about March 2018, in the Northern District of Georgia and elsewhere, the defendant, **WILLIAM SPENCER ASKEW**, did knowingly execute and

attempt to execute a scheme and artifice to defraud a financial institution, FNB Bank, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, and by omission of material facts, certain moneys, funds, credits, assets, securities, and other property owned by and under the custody and control of FNB Bank.

### Manner and Means

11. On or about February 14, 2018, defendant **ASKEW** submitted to FNB Bank separate applications for a $2 million loan and a line of credit application on behalf of his shell company Teknowlogi.

12. Defendant **ASKEW** was seeking the $2 million loan to purportedly finance Teknowlogi's acquisition of SaaS Transportation Inc. ("SaaS"), a transportation company that provided management solutions for certain types of shipping. The loan had a ten-year term and was collateralized by a $2.5 million dollar life insurance policy. Defendant **ASKEW** also personally guaranteed this loan. In the process of securing the loan, defendant **ASKEW** communicated with T.D., the CEO and President of FNB Bank, via telephone and email.

13. The line of credit that defendant **ASKEW** applied for would provide a $500,000 two-year revolving line of credit. Defendant **ASKEW** was authorized to draw from this line of credit for working capital for Teknowlogi, which included using this line of credit to fund marketing efforts to grow SaaS.

14. In applying for the $2 million loan and a $500,000 line of credit, defendant **ASKEW** made, among others, the following false representations: (i) defendant

4

ASKEW falsely represented Teknowlogi's financials by claiming that Teknowlogi owned the Uber-like software; (ii) defendant ASKEW falsely represented that he had a current deal to acquire SaaS; (iii) defendant ASKEW falsely represented that he had no undisclosed contingent liabilities with other financial institutions; and (iv) defendant ASKEW falsely represented that he had no undisclosed liabilities with individual lenders.

15. With respect to Teknowlogi's financials, defendant ASKEW failed to disclose that Teknowlogi conducted little or no business and was essentially a shell corporation that he formed. Defendant ASKEW in fact provided fraudulent financial statements of TEK — as if they were Teknowlogi's own financial statements — that falsely represented that Teknowlogi had net income of approximately $468,359 in 2017 when in fact TEK had incurred a loss of approximately $670,000 in 2017. Defendant ASKEW further misrepresented that Teknowlogi owned the TEK software, when in fact, as defendant ASKEW then knew, the TEK software was actually owned by EFSWW and EFS Holdings.

16. With respect to SaaS, defendant ASKEW falsely represented to FNB Bank that the proposed acquisition was still moving forward when defendant ASKEW knew that the SaaS deal was off because defendant ASKEW had failed to complete the purchase of SaaS in or about January 2018. Defendant ASKEW also did not disclose to FNB Bank that SaaS further confirmed that the transaction was off in a letter sent to defendant ASKEW on or about February 12, 2018.

17. Defendant ASKEW further failed to disclose to FNB Bank that he had significant outstanding liabilities to various merchant cash advance companies,

such as Ace Funding Source LLC and Biz Fund. A merchant cash advance is a financing option where a business receives a lump sum of capital that is collateralized by its future sales. Merchant cash advances are a more expensive form of financing than conventional bank loans.

18. On or about March 1, 2018, FNB Bank approved the $2 million loan to defendant **ASKEW** and Teknowlogi to finance the acquisition of SaaS and a $500,000 line of credit to use for working capital.

19. On or about March 1, 2018, FNB Bank wired the $2 million loan proceeds to Teknowlogi's WF x1261 account. At the time of transfer, the balance in the WF x1261 account was approximately $109,054.

### Askew used the FNB loan for improper purposes

20. After the $2 million was wired into Teknowlogi's WF x1261 account, defendant **ASKEW** did not use the funds to finance the purchase of SaaS but rather improperly used the funds to pay off various creditors, including merchant advance companies and individuals who had loaned defendant **ASKEW** money. In total, between approximately March 1, 2018 and April 24, 2018, defendant **ASKEW** made over $900,000 in payments to various creditors. In addition, on or about April 24, 2018, defendant **ASKEW** wired $500,000 from the WF x1261 account to Vinings Bank to satisfy collateral obligations in connection with obtaining a fraudulent line of credit from Vinings Bank.

### Askew concealed from FNB Bank that he misused the loan proceeds

21. Defendant **ASKEW** took affirmative steps to conceal from FNB Bank that he had used the proceeds from the $2 million loan and credit line for improper

6

purposes. In or about August 2018, FNB Bank requested an update from defendant **ASKEW** on the status of the SaaS acquisition. On or about August 31, 2018, defendant **ASKEW** falsely informed FNB Bank via email that defendant **ASKEW** and Teknowlogi had elected to not purchase SaaS after learning during final negotiations that SaaS had lost a significant customer. Defendant **ASKEW** knew this was false because the deal to acquire SaaS had fallen through months earlier in or about January 2018. SaaS had also not lost any major customers at this time; rather, SaaS was acquired in or about May 2018 by WiseTech Global.

22. Defendant **ASKEW** further concealed the misuse of the loan proceeds by falsely representing to FNB Bank that after the potential SaaS acquisition fell through, defendant **ASKEW** and Teknowlogi pursued the acquisition of Cloud 9 Express, a Kansas City, Kansas based freight audit and payment company. On or about August 31, 2018, defendant **ASKEW** falsely represented in an email to T.D., FNB's CEO and President, that Teknowlogi had acquired Cloud 9 Express instead of SaaS. To substantiate this acquisition, defendant **ASKEW** provided FNB Bank a fraudulent Asset Purchase Agreement dated August 3, 2018 that was purportedly executed by defendant **ASKEW** on behalf of Teknowlogi and by the owner and CEO of Cloud 9 Express, B.K. Defendant **ASKEW** also falsely represented that the purchase price was $2,250,000.

All in violation of Title 18, United States Code, Section 1344.

## Count Two
### (18 U.S.C. § 1957 – Money Laundering)

23. The factual allegations contained in Paragraphs 1 through 8 and 11 through 22 of this Indictment are re-alleged and incorporated as if fully set forth herein.

24. On or about April 24, 2018, in the Northern District of Georgia and elsewhere, the defendant, **WILLIAM SPENCER ASKEW**, did knowingly engage and attempt to engage in the following monetary transaction by, through, and to a financial institution, affecting interstate and foreign commerce, namely, the transfer of $500,000 from the WF x1261 account to the Vinings x3612 account, knowing that said transaction involved criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, wire fraud and bank fraud, in violation of Title 18, United States Code, Sections 1343 and 1344.

All in violation of Title 18, United States Code, Section 1957.

## Count Three
### (18 U.S.C. § 1344 – Bank Fraud against Vinings Bank)

25. The factual allegations contained in Paragraphs 1 through 8 and 11 through 22 of this Indictment are re-alleged and incorporated as if fully set forth herein.

26. Beginning no later than in or about February 2018, and continuing until at least on or about April 30, 2018, in the Northern District of Georgia and elsewhere, the defendant, **WILLIAM SPENCER ASKEW**, did knowingly execute

8

and attempt to execute a scheme and artifice to defraud a financial institution, Vinings Bank, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, and by omission of material facts, certain moneys, funds, credits, assets, securities, and other property owned by and under the custody and control of Vinings Bank.

## Manner and Means

27. During approximately the same period that defendant **ASKEW** sought financing from FNB Bank to purportedly acquire SaaS, defendant **ASKEW** applied to Vinings Bank for similar financing to acquire SaaS. In doing so, defendant **ASKEW** submitted fraudulent financial information to Vinings Bank as he had to FNB Bank. Defendant **ASKEW** also failed to disclose with respect to the purported acquisition of SaaS that:

   a. SaaS had terminated any potential deal because defendant **ASKEW** had failed to complete the purchase of SaaS in or about January 2018. Defendant **ASKEW** did not disclose to Vinings Bank that SaaS further confirmed that the transaction was off in a letter sent to defendant **ASKEW** on or about February 12, 2018; and

   b. FNB Bank had approved defendant **ASKEW**'s request for a $2 million loan to purchase SaaS on or about March 1, 2018.

28. On or about March 23, 2018, the Vinings Bank board approved a $2 million loan for defendant **ASKEW** and Teknowlogi to purchase SaaS. Shortly thereafter, however, defendant **ASKEW** informed Vinings Bank that SaaS had been

9

allegedly purchased for twice the price that defendant **ASKEW** offered. Accordingly, defendant **ASKEW** now sought a $1 million revolving line of credit for Teknowlogi. This line of credit was to be used for short-term capital and operational expenses.

29. In connection with obtaining this $1 million line of credit, Vinings Bank requested, among other things, the following material information: defendant **ASKEW**'s personal financial statement including assets and liabilities, defendant **ASKEW**'s tax returns, Teknowlogi's financial statements including assets and liabilities, and Teknowlogi's balance sheet.

30. In response, defendant **ASKEW** falsely represented to Vinings Bank that he had disclosed all of his liabilities when in fact he had significant debts to individuals and merchant cash advance companies.

31. In particular, defendant **ASKEW** did not disclose that: (i) on behalf of Teknowlogi, defendant **ASKEW** had received a $2 million dollar loan and a $500,000 line of credit from FNB Bank in March 2018; and (ii) defendant **ASKEW** had personally guaranteed the March 2018 FNB Bank loan and line of credit.

32. On or about April 12, 2018, defendant **ASKEW** signed a commitment letter with Vinings Bank in connection with the requested $1 million line of credit. Defendant **ASKEW** specifically acknowledged that Vinings Bank relied upon information that defendant **ASKEW** provided relating to financial statements, accounts, and assets, and that, but for these assets, the bank would not extend the line of credit. Defendant **ASKEW** agreed to provide true, correct, and complete financial information for himself, Teknowlogi, and EFS Holdings. The

10

commitment letter also required that defendant **ASKEW** personally guarantee the line of credit.

33. Defendant **ASKEW** further agreed in the commitment letter that all financial statements he provided to Vinings Bank were true and correct in all material respects and that the financial statements fairly and accurately presented defendant **ASKEW**'s financial condition as of the dates indicated. Defendant **ASKEW** further agreed that there was no material contingent liability or obligation assertable against him that was not identified and disclosed to the bank in the financial statements.

34. On or about April 23, 2018, defendant **ASKEW** submitted a fraudulent balance sheet and financial statement for Teknowlogi to Vinings Bank. Defendant **ASKEW** also falsely represented that Teknowlogi owned the TEK software, when in fact, as Defendant **ASKEW** then knew, the TEK software was actually owned by EFSWW and EFS Holdings. Defendant **ASKEW** further failed to disclose to Vinings Bank that Teknowlogi was essentially a shell company that conducted little or no business.

35. On or about April 23, 2018, defendant **ASKEW** also falsely represented to Vinings Bank that Teknowlogi was a transportation broker to over 639 clients in 2017. Defendant **ASKEW** in fact submitted forged documents from TEK, which defendant **ASKEW** passed off as Teknowlogi's own documents. Indeed, TEK's actual financial statements showed that TEK had at most 258 clients in 2017 of which approximately 96 completed bookings.

11

36. As part of the collateral for the $1 million revolving line of credit, Vinings Bank required defendant **ASKEW** to post a $500,000 security interest in a money market account held at Vinings Bank. The money market account had to always maintain a balance of $500,000. Accordingly, defendant **ASKEW** established a money market account in the name of Teknowlogi (Vinings x3612). To fund this account, on or about April 24, 2018, defendant **ASKEW** wired $500,000 from the WF x1261 account to the Vinings x3612 account. At least $376,000 of that wire was funded by fraudulently obtained loan proceeds from FNB Bank.

37. On or about April 30, 2018, Vinings Bank approved the $1 million line of credit to defendant **ASKEW** and Teknowlogi.

All in violation of Title 18, United States Code, Section 1344.

## Counts Four and Five
### (18 U.S.C. § 1344 – Bank Fraud against Vinings Bank)

38. The factual allegations contained in Paragraphs 1 through 8 of this Indictment are re-alleged and incorporated as if fully set forth herein.

39. Beginning no later than in or about January 2019, and continuing until at least in or about June 2019, in the Northern District of Georgia and elsewhere, the defendant, **WILLIAM SPENCER ASKEW**, did knowingly execute and attempt to execute a scheme and artifice to defraud a financial institution, Vinings Bank, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, and by omission of material facts,

certain moneys, funds, credits, assets, securities, and other property owned by and under the custody and control of Vinings Bank.

## Manner and Means

40. In or about January and February 2019, defendant **ASKEW** applied for and received a second line of credit on behalf of Teknowlogi from Vinings Bank for $2 million. Defendant **ASKEW** was required to use this line of credit to buy back Teknowlogi's and EFS Holdings's shares or use the funds for working capital for Teknowlogi.

41. Specifically, on or about February 21, 2019, defendant **ASKEW** executed the loan agreement, which provided that defendant **ASKEW** would use the proceeds of the line of credit solely for the redemption of specific membership interests of Teknowlogi and EFS Holdings and closing costs. The loan agreement expressly prohibited defendant **ASKEW** from using any of the proceeds of the line of credit for personal, family, or household purposes. The loan agreement also required defendant **ASKEW** to commit to "take no action which shall cause any assets used as collateral to be diminished, transferred, burdened or commingled with any other assets of any other parties."

42. Defendant **ASKEW** made multiple false representations and material omissions to Vinings Bank in connection with this line of credit.

43. On or about January 15, 2019, defendant **ASKEW** submitted to Vinings Bank fraudulent financial information for Teknowlogi in connection with applying for the $2 million line of credit. Defendant **ASKEW** also falsely represented that Teknowlogi owned the TEK software, when in fact, as

13

defendant **ASKEW** then knew, the TEK software was actually owned by EFSWW and EFS Holdings. Defendant **ASKEW** further failed to disclose to Vinings Bank that Teknowlogi was essentially a shell company that conducted little or no business.

44. On or about January 17, 2019, defendant **ASKEW** executed a commitment letter with Vinings Bank in which defendant **ASKEW** agreed that the financial statements he had provided to Vinings Bank were true and correct in all material respects and fairly and accurately presented the borrower's financial condition. Moreover, defendant **ASKEW** agreed to provide true, correct, and complete financial information for himself, Teknowlogi, and EFS Holdings. By signing the commitment letter, defendant **ASKEW** also represented to Vinings Bank that he had no undisclosed financial obligations and liabilities. This representation was false. Defendant **ASKEW** did not, for example, disclose to Vinings Bank: (i) Teknowlogi's outstanding liabilities to FNB Bank and that he had personally guaranteed the FNB Bank loan and line of credit; and (ii) his significant liabilities to individual investors and merchant cash advance companies.

45. Vinings Bank secured the $2 million line of credit with the following: (i) a $1 million money market account; (ii) a first-priority security interest on all assets of Teknowlogi; (iii) defendant **ASKEW's** $4 million dollar life insurance policy; and (iv) a first-priority security interest in all of defendant **ASKEW's** patents, including one that defendant **ASKEW** had purportedly filed for the Uber-like software developed by employees of EFSWW. In pledging the patent as partial collateral, defendant **ASKEW** agreed that he would keep the patent free from

14

any lien, attachment, security interest, or encumbrance. Defendant **ASKEW** also personally guaranteed the $2 million line of credit. Vinings Bank subsequently perfected its security interest in this patent by recording a notice of assignment with the United States Patent and Trademark Office and recording a UCC-1 financing statement. Without notifying Vinings Bank, defendant **ASKEW** subsequently pledged this same patent as collateral with respect to other loans and financing he obtained.

46. In addition, on or about February 21, 2019, defendant **ASKEW** signed an unconditional guarantee of payment and performance on behalf of EFS Holdings for Vinings Bank. Defendant **ASKEW** thus pledged that EFS Holdings would guarantee to pay and perform defendant **ASKEW**'s and Teknowlogi's obligations relating to the $2 million line of credit. Defendant **ASKEW** did not disclose to Vinings Bank that EFS Holdings's wholly owned subsidiary, EFSWW, had received on or about December 3, 2018 an $11 million loan from Accel-KKR ("AKKR"), a technology-focused private equity firm. AKKR's loan was secured by all of EFSWW's assets. Defendant **ASKEW** failed to disclose to Vinings Bank the existence of AKKR's loan or its lien on EFSWW's assets.

47. On or about February 21, 2019, Vinings Bank approved the $2 million line of credit and disbursed $1,541,200 to the Vinings x3612 account. In accordance with the January 17, 2019 commitment letter, defendant **ASKEW** was required to use this initial draw to repurchase Teknowlogi's and EFS Holdings's outstanding shares from defendant **ASKEW**'s investors. With respect to the remaining $428,204 in the line of credit (after accounting for closing costs), defendant

ASKEW was first required to execute an "advance loan request" before Vinings Bank would authorize defendant ASKEW to draw down any additional funds from the line of credit.

### Askew used the $2 million line of credit for improper purposes

48. On or about February 21, 2019, defendant ASKEW wired the $1,541,200 from the Vinings x3612 account to the WF x1261 account. Just prior to the transfer, the balance in the WF x1261 account was approximately $86,838.

49. After transferring the funds to the WF x1261 account, defendant ASKEW did not use the $1,541,200 for the approved purpose to repurchase shares. Instead, defendant ASKEW improperly used these funds to pay off creditors, and for other unapproved uses. Between approximately February 21, 2019 and May 10, 2019, defendant ASKEW made approximately $1,664,507 in payments to creditors, including multiple merchant advance companies, none of whom defendant ASKEW disclosed to Vinings Bank.

50. On or about June 13, 2019, defendant ASKEW submitted a "loan advance request" to Vinings Bank to receive a $164,700 draw on the line of credit. Defendant ASKEW falsely claimed that was seeking this draw to pay M.E. and G.P. $82,350 each for their shares in Teknowlogi.

51. In support of his request for the $164,700 draw, on or about June 13, 2019, defendant ASKEW submitted forged Unit Purchase Agreements to Vinings Bank that had been purportedly executed by M.E. and G.P. on or about June 11, 2019. By submitting these forged agreements, defendant ASKEW was able to conceal and disguise the fraudulent use of the line of credit proceeds.

16

52. On or about June 13, 2019, Vinings Bank approved defendant **ASKEW's** fraudulent request for the $164,700 to repurchase shares from M.E. and G.P. That same day, Vinings Bank released the funds into the Vinings x0733 account.

53. On or about June 17, 2020, the funds were transferred from the Vinings x0733 account to the WF x1261 account. Immediately prior to the transfer of the $164,700, the balance in the WF x1261 account was approximately $96,049.

54. Between approximately June 17, 2019 and June 24, 2019, the WF x1261 account received approximately an additional $111,566 in deposits. During this same period, defendant **ASKEW** disbursed more than $321,000 from the WF x1261 account to creditors, including multiple merchant cash advance companies, that defendant **ASKEW** never disclosed to Vinings Bank. None of these distributions went to M.E. and G.P. In fact, defendant **ASKEW** never repurchased M.E.'s or G.P.'s shares.

55. On or about the dates set forth in the table below, in the Northern District of Georgia and elsewhere, defendant **ASKEW**, for the purpose of executing and attempting to execute the bank fraud scheme and artifice described above in Paragraphs 39 through 53, did submit and cause to be submitted the following materially false information to Vinings Bank:

| Count | Date (On or about) | Execution and Attempted Execution |
|---|---|---|
| 4 | January 15, 2019 | Submission of fraudulent financial statements to Vinings Bank |
| 5 | June 13, 2019 | Submission of fraudulent Unit Purchase Agreements for M.E. and G.P. |

17

All in violation of Title 18, United States Code, Section 1344.

### Forfeiture Provision

56. Upon conviction of one or more of the offenses alleged in Counts One and Three through Five, the defendant, **WILLIAM SPENCER ASKEW**, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(2)(A), any property constituting, or derived from, proceeds obtained directly or indirectly as a result of said violations, including, but not limited to, the following:

> MONEY JUDGMENT: A sum of money in United States currency representing the amount of proceeds obtained as a result of the offenses alleged in Counts One and Three through Five of this Indictment.

57. Upon conviction of the offense alleged in Count Two of this Indictment, the defendant, **WILLIAM SPENCER ASKEW**, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(1), all property, real or personal, involved in such offense, or any property traceable to such property, including, but not limited to, the following:

> MONEY JUDGMENT: A sum of money in United States currency representing the amount of proceeds obtained as a result of the offense alleged in Count Two of this Indictment.

58. If, as a result of any act or omission of the defendant, any property subject to forfeiture:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without undue complexity or difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property.

A _____*True*_____ BILL

_____
FOREPERSON

RYAN K. BUCHANAN
United States Attorney

ALEX R. SISTLA
*Assistant United States Attorney*
Georgia Bar No. 845602

600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181

19